## Case No. 15,300.

### UNITED STATES v. HARBISON.

[13 Int. Rev. Rec. 118.]

Circuit Court, E. D. Tennessee. Jan. Term, 1871.

INTERNAL REVENUE — ILLEGAL DISTILLING AND RETAILING OF LIQUORS—AIDING AND ABETTING.

[1. The owner of a distillery, who rents the same to another, knowing that the latter intends to use it for distilling whisky in violation of law, is guilty of aiding and abetting such unlawful manufacture, within the meaning of the statute.]

[2. To be a retailer of liquor, within the meaning of the statute, one need not keep a shop or store or carry on the business for a livelihood. It is enough to warrant a conviction for selling by retail without a license that defendant did sell whisky, in small quantities on several occasions.]

[This was an indictment against J. C. Harbison, for violation of the internal revenue laws.]

On the trial of this case the only witness introduced by the government was James Williamson, who testified that about the month of December, 1866, he leased from the defendant a still and fixtures, on which witness made one run of eleven gallons of whisky, of which he was to and did pay the defendant one-seventh part for the use of said still and fixtures. Witness also stated that another person had rented from defendant, upon the same terms, the same still and fixtures some time in October and November, 1866, and had made two or three small runs thereon. Witness also stated that he had at three different times during the spring and summer of 1867 purchased whisky from the defendant, getting one quart each time, and paying seventy-five cents for each quart, all of which, witness stated, occurred within the district. No evidence was offered by the defence.

T. R. Camick, attorney for defendant, insisted that defendant could not be convicted for distilling, as charged in the first count, because, under the language of the statute, only the principal in the transaction could be said to "be carrying on the business of distiller," and that the doctrine of "aiders and abettors being guilty as principals" does not apply in such cases. As to the charge of retailing, defendant's attorney contended that occasional acts of retailing did not constitute a liability under this statute; but that, before a conviction could be had, the government must prove the defendant to have engaged in retailing spirituous liquors as a business or means of livelihood. Defendant's attorney cited and relied on the former holdings of Judge Trigg in the case of U. S. v. Cooper [Case No. 14,863], and U. S. v. Logan [Id. 15,624], as sustaining both of the positions above insisted on.

E. C. Camp, U. S. Dist. Atty., while admitting that the holding of Judge Trigg in the two cases cited sustained the positions taken by the attorney for defendant, yet insisted that those cases were not sustained either by sound reason or the authorities; while the results that would arise from such a construction of the law would be such as to defeat the very end intended to be accomplished by the law itself, and but serve to enable guilty parties to find a way of escape from punishment.

EMMONS, Circuit Judge (charging jury). I shall call your attention to that portion of the proof only which is uncontradicted. It is unnecessary to look beyond that of Williamson, if you give full credit to him. Your verdict will be the same under this indictment, whether one or many offences are proven under each count. There is but one for distilling and one for retailing. (His honor here read full minutes of the testimony of the witness Williamson, and said): Substantially he swears that the defendant was the owner of a still and apparatus for the manufacture of whisky; that on several occasions he leased them for the purpose of being unlawfully used, and received as rent one-seventh of the gross product of whisky made. Details are given. No counter testimony has been offered by the defendant. The witness is unimpeached and uncontradicted, and, if you think his statement consistent and rational, he is entitled to credit. You have no right to reject what he says as untrue by assuming the existence of some unproved hypothesis, or upon any imaginary surmise that by possibility he may be mistaken or untruthful. You may criticise and weigh the testimony as carefully as possible; but, when this duty is performed, if it would obtain your credence in the ordinary affairs of life, you have no right arbitrarily, and without reason, to say you will disregard it. If upon this evidence you believe that Harbison did the acts sworn to, they constitute the offence of distilling without a license. It is not necessary that a defendant should carry on the business personally, that he should be responsible for the labor, or interested as owner, or act as chief agent. It is enough that he aids and abets the manufacture, knowing that it is carried on in violation of law. A citizen has no right to aid in breaking the laws of his country, and is bound alike in law and morals to abandon all service for another the moment he has good reason to believe his business is carried on in disregard of them. Should the owner of an illicit distillery be absent from the state, or, being within it, be unknown, if such were not the rule, this statute might through the instrumentality of agents and laborers, be broken with impunity. It is a necessary doctrine that all who knowingly aid are alike guilty. A thousand may be as much so as one, if they have common knowledge of illegality. The imaginary hardship of this doctrine is wholly answered

inference of the insolvency of this firm, if not of a design fraudulently to defeat the just rights of creditors, that a few days after the date of the agreement referred to, Wing sold and transferred to Black, who appears to have been without means, the entire stock in trade; and the business was for some time carried on in the name of Black, but as appears from his own admission, really for the benefit of Wing. This arrangement continued till within a few days prior to Wing's application in bankruptcy, when Black surrendered and transferred the property and effects to Wing. There is no explanation of this transaction, redeeming it from the suspicion which the facts so fully warrant. It seems to admit of no other construction, than that Wing, under the pressure of his embarrassments, made the pretended transfer to Black, with a view to defeat his creditors in their efforts to enforce the collection of their debts. The property thus transferred by Black to Wing, on the eve of his application in bankruptcy, was entered on his schedule of property and effects, as owned by him.

These considerations, in connection with the fact that in the autumn following the date of the agreement of dissolution, both Wing and Lamb filed applications in bankruptcy, and thus made the most solemn admission of hopeless insolvency, leave little doubt in the mind of the court, that at the date of the agreement, they were involved in difficulties from which they could have no hope of extrication.

Although, on the well settled principles of equity, for reasons already stated, the sale and transfer to Wing can not be sustained, it may not be improper to notice that it is clearly condemned by the second section of the bankrupt law; and that the present controversy between these parties is so far connected with a proceeding under that law, as to bring the transaction in question within its scope and operation, there is no room to doubt. By the second section of the act, all payments, transfers, etc., made when the party was in a state of insolvency, and which, in their operation, give a preference to particular creditors, fall within its prohibition; and, by a well settled construction, are regarded as made in contemplation of bankruptcy, and as possessing no validity. The transfer of the property and effects of the firm to Wing, under the agreement of the 22d of April, 1842, is clearly within the letter and the spirit of this section. It was made in contemplation of bankruptcy, and in its effect, gave a fraudulent preference to the separate creditors of the individual members of the firm, over the creditors of the firm, thus benefiting the one class, to the prejudice of the other. Such being the views of the court, they decree the cancelment of the articles of dissolution, and direct that the distribution of the proceeds of the partnership property and effects be made as if no such dissolution had taken place. And if, in carrying out the principles of this decree, a further reference to a master is necessary, that object may be embraced in the decree drawn by counsel.